IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Linda Wood,<br><br>        Plaintiff,<br><br>vs.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>        Defendant.<br>_____ | Civil Action No. 2:10-509-MBS-BHH<br><br><br><br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Linda Wood, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") under Titles II of the Social Security Act.

### RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was 49 years old on her alleged onset date. (R. at 25.) She alleges she became disabled on September 3, 2005. (R. at 78-86.) She has a high school education and has past work as an industrial cleaner, short order cook and assembler. (R. at26-27, 33.)

The plaintiff filed applications for DIB and SSI in October 2005. (R. at 78-86.) Her applications were denied in initial and reconsidered determinations. (R. at 39-45, 49-55.) After a hearing on January 27, 2009 (R. at 21-34), an Administrative Law Judge (ALJ) denied plaintiff's claim on February 23, 2009 (R. at 4-20). As the Appeals Council denied

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

the plaintiff's request for review (R. at 1-3), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)   The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> (2)   The claimant has not engaged in substantial gainful activity since September 3, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> (3)   The claimant has the following severe impairments: obesity and staring spells (20 CFR 404.1521, *et seq.* and 416.921, *et seq.*).
>
> (4)   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).
>
> (5)   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform unskilled, medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that she should take reasonable precautions against exposure to hazardous situations such as unprotected heights and dangerous machinery or climbing ladders, ropes or scaffolds.
>
> (6)   The claimant is capable of performing past relevant work as industrial cleaner and assembler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> (7)   The claimant has not been under a disability, as defined in the Social Security Act, from September 3, 2005, through the date of this decision (20 CFR. 404.1520(f) and 416.920(f)).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform

alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to give controlling weight to the opinion of her treating physician and (2) failing to find her arthritis and mental condition severe. The Court will consider each alleged error in turn. As an initial matter, the Court would make the general observation that the decision of the ALJ is thorough and well-supported, even where it may have combined or collapsed some portions of the analysis.

**I.   Treating Physician**

The plaintiff first argues that the ALJ erred in failing to assign proper weight to the opinion of her treating physician, Dr. Michael Mareska. (Pl.'s Br. at 9-11.) Although there appears to be at least three treating physicians, Drs. Julian Adams, Jeremy Ambroziak, and Mareska, the only opinion the plaintiff discusses as having been wrongly credited is that of Dr. Mareska.[2]  *See id.*  On April 27, 2009, the plaintiff underwent a video EEG at the Medical University of South Carolina, which revealed abnormal results indicative of a lowered seizure threshold with a propensity toward primary generalized seizures." (Pl. Ex. A.) Based on that EEG report, the plaintiff's treating physician, Michael Mareska, M.D., opined that "Mrs. Woods suffered from petit mal seizures in the form of staring spells more than once a week from at least 2005 through February, 2010." (Pl. Ex. B.) Moreover, based on a review of his medical records as well as from the new diagnostic evidence, Dr. Mareska concluded that Mrs. Woods met the criteria as set forth in listing 11.03—non convulsive epilepsy. *Id*. Finally, Dr. Mareska concluded that the plaintiff was not able to work both due to her seizure disorder as well as due to the severe side effects of the medications she is taking to treat her condition. *Id*. at 2.

---

[2]  The defendant, however, spends most of his time supporting the ALJ's consideration of the Adams and Ambroziak opinions, not implicated by the plaintiff's objections, and essentially no time in defense of the weight given to the Mareska opinion, which is.

It is true that the medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *See Blalock*, 483 F.2d at 775.

In arguing this objection first in her brief, the plaintiff has strangely put the cart before the critical horse. The ALJ could not have reasonably given weight of any kind to the opinion of Dr. Mareska, because that opinion did not exist at the time of the decision. The ALJ rendered his decision on February 23, 2009. (R. at 20.) The EEG was performed in April 2009 and Dr. Mareska's opinion was rendered in June of that same year. (Pl. Exs. A, B.) It is undisputed that the plaintiff did not submit the report and opinion, after the fact, to the Appeals Council.

So, there can be no basis to reverse or remand for any alleged failure to give controlling weight to an opinion that had not been rendered as of the time at which the ALJ was tasked with considering and weighting medical opinions.

The question remains, however, whether the evidence, EEG Report and Mareska opinion, can now be considered in this Court. The plaintiff makes no argument other than to say that "Dr. Mareska did not order the testing until after the hearing was convened." (Pl. Brief at 14.) As the defendant notes, this showing is insufficient.

Sentence six of 42 U.S.C. § 405(g) authorizes the courts to remand cases for consideration of additional evidence where the evidence is new material and good cause exists "for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). In *Borders v. Heckler*, 777 F.2d 954 (4th Cir. 1985), *superseded by statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dept. of Health and Human Servs.*, 925 F.2d 769, 774 (4th Cir.1991),[3] the Fourth Circuit explained:

> A case will be remanded to the Commissioner for consideration of newly discovered evidence where the following requirements are satisfied: (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court at least a general showing of the nature of the newly discovered evidence.

*Id*. at 955 (internal citations and quotations omitted).

The plaintiff has neither recognized the necessary showing nor attempted to make it. Even if the Court were to reasonably assume that the ALJ's decision might have been different had the new evidence been available, the plaintiff has offered no good cause for the failure to submit it sooner. Although the plaintiff did not have the EEG report and opinion at the time of his April 21, 2009 request for Appeals Council review (R. at 77), the Appeals Council did not ultimately decline review until January 5, 2010. (R. at 1-3.) As such, the plaintiff had over eight months to submit the EEG report and Dr. Mareska's subsequent opinion to the Appeals Council for consideration but did not. She has not

---

[3] *Wilkins* itself was vacated but other courts have continued to rely on *Wilkins* in acknowledging that the *Borders* four-part test still survives after amendment of Section 405. "Though the court in *Wilkins* indicated in a parenthetical that Borders' four-part test had been superseded by 42 U.S.C. § 405(g), the Fourth Circuit has continued to cite *Borders* as the authority on the requirements for new evidence when presented with a claim for remand based on new evidence, and the U.S. Supreme Court has not suggested that the Borders construction of § 405(g) is incorrect." *Ashton v. Astrue*, C.A. No. TMD 09-1107, 2010 WL 3199345, at *3 n. 4 (D. Md. Aug.12, 2010) (citing cases); *Brooks v. Astrue*, 2010 WL 5478648, at *8 & n.4 (D.S.C. November 23, 2010)

offered any explanation. *Cf. Bullock v. Commissioner of Social Sec.*, 2008 WL 5235852, at *4 (E.D. Mich. 2008) ( remanding good cause shown where evidence was not provided before the Appeals Council denied review notwithstanding counsel's exercise of due diligence). The Court knows of no other grounds to excuse it.

There can be no error in the ALJ's treating physician analysis, as alleged, nor is there any basis offered to consider new evidence at this stage.

## II.     Severe Impairments

The plaintiff next complains that the ALJ erred in concluding that her arthritic condition was not "severe." To establish a severe impairment, a claimant must provide medical evidence that her impairments significantly limit her ability to perform "basic work activities." *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 146 n.5 (1987) ("An impairment is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities"; it is Plaintiff's burden to show she has a severe impairment); 20 C.F.R § 404.1520(c). Social Security Ruling 96-3p states that the Commissioner will consider a claimant's impairment "severe" if it significantly limits his physical or mental abilities to perform basic work activities. SSR 96-3p.

The plaintiff's burden to show a severe impairment is not an exacting one, however. Although the regulatory language speaks in terms of "severity," the plaintiff need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28; *see also Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984) ("[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."); *Albright v. Commissioner of Social Sec. Admin.*, 174 F.3d 473, 474 n.1 (4th Cir. 1999). In short, the "inquiry is a *de minimis* screening device to dispose of groundless claims." *McCrea v. Commissioner of Social Sec.*, 370 F.3d 357, 360 (3rd 2004).

The ALJ did not find a severe arthritic condition. (See R. at 9.) Supporting analysis, however, was not made proximate to that finding. In fact, the Court is not precisely sure that a specific Step Two severity discussion related to arthritis was actually ever made. That being said, the ALJ unequivocally discussed the limiting effects of the condition as he found them to be not to a significant extent.

The plaintiff relies substantially on the opinion of her treating physician, Jeremy Ambroziak, M.D., that she suffers from severe arthritis. (R. at 226, 293 and 309.) Dr. Ambroziak categorized the plaintiff's condition as "borderline rheumatoid arthritis" which resulted in difficulty walking. (R. at 226.) The plaintiff has been receiving prednisone for her condition since at least 2001. (R. at 227.) Diagnostic testing revealed osteoarthritis in her right knee and a possible degenerative cyst in her left knee. (R. at 210, 370.)

In rejecting the condition's severity and/or disabling effects, the ALJ noted that diagnostic studies did not show the type of acute abnormalities that would preclude basic physical work-related activities. (R. at 12-13). For example, the ALJ recognized that x-rays showed only "mild" arthritic changes in her hip, but her SI joints and pelvis were normal, her right knee and ankle showed only "mild" degenerative changes, and her right lumbar spine and right hand were "unremarkable." (R. at 13, 282, 315, 368, 370, 416-17.) Similarly, an MRI scan of her lumbar spine was negative, and a CT cervical spine scan was negative. (R. at 13, 375, 478.)

The ALJ also noted that Dr. Ambroziak's treatment notes contained inconsistent findings. (R. at 18.) For example, in September 2005, Dr. Ambroziak diagnosed Plaintiff with severe arthritis and noted that she had difficulty walking. (R. at 226.) However, just three days later, Dr. Ambroziak's treatment notes indicated that Plaintiff had normal strength and sensation in her extremities and no edema. (R. at 280.) Similarly, at the time that Dr. Ambroziak rendered his March 2006 opinion, which listed osteoarthritis as the primary reason for the plaintiff's disability, his treatment notes showed only diffuse hip joint and knee joint soreness and no edema.. (R. at 302.) Subsequent treatment notes in June

2006 and November 2006, similarly noted only "diffuse" lower back muscle soreness, "diffuse" arthritic changes, or "diffuse" burning, and only once did Dr. Ambroziak note pain during her straight leg raising test. (R. at 510.) In February 2007, Dr. Ambroziak's notes indicated that the plaintiff had symmetrical strength and reflexes. (R. at 491.) Finally, although Dr. Ambroziak opined in April 2007 that the plaintiff was "completely and permanently disabled," his August 2007 treatment notes indicated that the plaintiff's extremities were "unremarkable." (R. at 487.)

The plaintiff does not contest any of these observations. The plaintiff does emphasize that she received physical therapy and was prescribed a cane and a walker due to her arthritic knee condition. (R. at 435.) She also highlights therapy notes which she contends reveal that she fatigued easily and that her treating physician concluded that she could not carry or lift even 10 pounds on an occasional basis and could not stand or walk for even one hour in an eight hour day. (R. at 350-353, 444.) The plaintiff concludes that such evidence, in combination with the incontrovertible fact of her weight, leads inexorably to the conclusion that her orthopaedic condition clearly resulted more than a "minimal or slight limitations in the Claimant's ability to sustain basis work-related activities." (Pl. Brief at 12.) And, the plaintiff may be right.

But, the point is of no moment. As discussed, the ALJ continued to analyze the actual limiting effects of the alleged condition in the residual functional capacity assessment, and the plaintiff has not challenged any of that discussion. To the extent the ALJ erred in the severity analysis at Step 2 of the sequential process, it is harmless, therefore. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error"). Even the limited evidence cited by the plaintiff, does not meet the ALJ's specific points as to the ultimate degree of limitation to be associated with the alleged arthritis. And, the shere fact that the plaintiff might produce evidence from which one might conclude differently than the ALJ, as she has, is

of no consequence, so long as the ALJ has cited substantial evidence in support. He did. And, it remains uncontroverted. *See Blalock*, 483 F.2d at 775; *Millner v. Schweiker*, 725 F.2d 243, 245 (4th Cir. 1984) ("[I]t is immaterial that eight medical witnesses disagreed with the ALJ's conclusion, provided that one such witness gave sufficient probative evidence.").

Lastly, the plaintiff also complains that the ALJ failed to find her mental impairments severe. The plaintiff argues that a review of the record reveals that she suffers from mental retardation, depression with poor attention/concentration and distractible thought processes. (See R. at 293, 310.) The plaintiff points to a mental disability evaluation by Dr. John Whitley, III, Ph.D., on August 17, 2006, who concluded that she had a full-scale and performance IQ of 62. (R. at 326.) Dr. Whitley further opined that her short-term memory and concentration were impaired and that she suffered from significant depression and anxiety. (R. at 326.) Imaging of her brain indicated that she had suffered brain infarcts suggestive of stroke. (R. at 417, 494.)

Again, the plaintiff has made an objection without much significance. She contends that her "mental condition should have been considered 'severe' ***resulting in severe limitations or restrictions***." (Pl. Brief at 13.) But, as stated, that is not what the "severe" designation means at Step 2. Rather, it means simply that an individual has some limitation which creates at least more than a minimal effect on an individual's ability to work. *See* SSR 85-28. So, even to the extent the ALJ had found the plaintiff's mental condition severe, he was not somehow constrained to conclude that serious limitations existed. Such is not the nature of the severity inquiry.

In regards to evidence of the plaintiff's mental condition, the ALJ discounted Dr. Whitley's opinion because it was generally inconsistent with the record as a whole. The ALJ noted that the plaintiff graduated from high school after attending regular classes and participated in a "fairly active and varied lifestyle," including going to church, caring for her granddaughter, caring for her personal needs, and doing light housework. (R. at 15, 135,

314.) Significantly, the ALJ recognized that the plaintiff had performed some semiskilled work in the past. (R. at 15, 27, 33.) The ALJ also concluded that Dr. Whitley's findings were contradicted by those of Dr. Adams who had observed that the plaintiff handled money and did not show evidence of dementia. (R. at 15, 602.) It should be noted that Dr. Adams repeatedly found that "a lot of [the plaintiff's] problems are either malingering or hysterical" and that they were "well controlled by medication for many years." (R. at 600, 602, 591-602.)

The plaintiff, in her brief, quibbles about the ALJ's recourse to "a 'check form' in a progress note provided by one of the plaintiff's physical therapists." (Pl. Brief at 12.) The check form states that the plaintiff was "able to understand and express complex ideas completely and easily in all situations with no observable impairment . . . showed normal attention, normal short-term and long-term memory and good judgment." (R. at 15, 470.) The plaintiff complains that it was improvident for the ALJ to rely on a physical therapist's observations over those of Dr. Whitley. The Court would reject this concern for two reasons. First, the ALJ cited other substantial evidence than the physical therapist's report, which sustains his conclusions. Second, to the Court, the ALJ's remarks concerning the therapist's report were relied upon illustratively rather than expertly. In other words, the plaintiff's performance for the therapist was just additional evidence of her functioning level.

It should be emphasized that the plaintiff does not contend that her condition meets, at Step 3, the regulation Listing requirements that she had "deficits in adaptive functioning" that are consistent with a diagnosis of mental retardation. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00 and 12.05(C) (defining mental retardation). She has limited her objection to the severity classification at Step 2 and, apart from the therapist's report, has not challenged any of the ALJ's discussion of the actual limitations associated with her mental condition. The substantial evidence of the ALJ used to discount Dr. Whitley's findings has simply not been addressed.

Accordingly, the Court would not recommend remand for any deficiency in the severity consideration by the ALJ at Step 2 of the sequential process either as to the plaintiff's arthritis or mental condition.

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

s/Bruce H. Hendricks<br>
BRUCE H. HENDRICKS<br>
UNITED STATES MAGISTRATE JUDGE

February 23, 2011
Charleston, South Carolina